**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TAU CETI VENTURES LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:26-cv-00501 |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD. | ) |
| and SAMSUNG ELECTRONICS | ) |
| AMERICA, INC., | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Tau Ceti Ventures LLC ("TCV" or "Plaintiff"), by and through the undersigned counsel, hereby asserts the following claims for patent infringement against Defendants Samsung Electronics Co., Ltd. ("Samsung Electronics") and Samsung Electronics America, Inc. ("Samsung Electronics America") (collectively, "Samsung" or "Defendants"), and alleges as follows:

## SUMMARY

1. Plaintiff is the owner by assignment of all right, title and interest in United States Patent Nos. 8,089,218; 8,101,959; 8,492,780; 8,552,460; 8,766,309; 9,257,604; 9,847,460; 10,038,116; 10,439,108; and 10,566,509 (collectively, the "Patents-in-Suit"; attached hereto as Exhibits A-J, respectively).

2. Defendants infringe the Patents-in-Suit by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, a number of its commercial products (e.g., laptops and monitors) including, *inter alia*, the Samsung Galaxy Watch 8, Samsung QN43QN90FAF, Samsung Galaxy Z Flip 7, Samsung R85H Micro

1

RGB, Samsung 24"Monitor S24D304GAN S3, Samsung Galaxy S25, Samsung tab a9+, Samsung Galaxy Book 4 NP750XGK, S32D396G'AN S3 32 Monitor, and other substantially similar products (collectively, the "Accused Products"). These Accused Products are marketed, offered, and distributed throughout the United States, including in this District.

3.　　By this action, Plaintiff seeks to obtain compensation for the harm Plaintiff has suffered, and will continue to suffer, as a result of Defendants' infringement of the Patents-in-Suit.

## NATURE OF THE ACTION

4.　　This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5.　　Defendants have infringed and continue to infringe, and at least as early as the filing and/or service of this Complaint, has induced and continues to induce infringement of, and has contributed to and continues to contribute to infringement of, one or more claims of Plaintiff's Patents-in-Suit at least by making, using, selling, and/or offering to sell the Accused Products in the United States, including in this District, and/or by importing the Accused Products into the United States.

6.　　Plaintiff is the legal owner by assignment of the Patents-in-Suit, which were duly and legally issued by the United States Patent and Trademark Office. Plaintiff seeks monetary damages for Defendants' infringement of the Patents-in-Suit.

## THE PARTIES

7.　　Plaintiff Tau Ceti Ventures LLC is a Texas limited liability company with its principal place of business at 17330 Preston Road, Suite 200D, Dallas, Texas 75252. Plaintiff is the owner of the intellectual property rights at issue in this action.

2

8.     Defendant Samsung Electronics is a corporation organized and existing under the laws of the Republic of Korea, having its principal place of business located at 129 Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do 16677, Korea.

9.     Defendant Samsung Electronics America is a corporation organized under the laws of New York, with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.  Samsung Electronics America has corporate offices in the Eastern District of Texas, including Excellence Way, Plano, Texas 75023.  Samsung Electronics America may be served with process in Texas through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201- 3136.

10.    On information and belief, Defendants, through its online store, directly and/or indirectly distributes, markets, offers to sell, and/or sells the Accused Products in the United States and/or imports the Accused Products into the United States, including in the Eastern District of Texas, and otherwise directs infringing activities to this District in connection with the Accused Products.

**JURISDICTION AND VENUE**

11.    As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

12.    This Court has personal jurisdiction over Defendants because Defendants have (i) availed itself of the rights and benefits of the laws of the State of Texas, (ii) transacted, conducted, and/or solicited business and engaged in a persistent course of conduct in the State of Texas (and in this District), (iii) derived substantial revenue from the sales and/or use of products, such as the Accused Products, in the State of Texas (and in this District), (iv) purposefully directed activities

3

(directly and/or through intermediaries), such as shipping, distributing, offering for sale, selling, and/or advertising the Accused Products, at residents of the State of Texas (and residents in this District), (v) delivered Accused Products into the stream of commerce with the expectation that the Accused Products will be used and/or purchased by consumers in the State of Texas (and in this District), and (vi) committed acts of patent infringement in the State of Texas (and in this District).

13.    Venue is proper as to Samsung Electronics in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because, *inter alia*, Samsung Electronics is a foreign corporation and suits against foreign entities are proper in any judicial district.

14.    Venue is proper as to Samsung Electronics America in this District under 28 U.S.C. § 1400(b) because, among other things, Samsung Electronics America has committed acts of patent infringement in this District and has regular and established places of business in this District, including at 6625 Excellence Way, Plano, Texas 75023, 6555 Excellence Way, Plano, Texas 75023, 6625 Declaration Way, Plano, Texas 75023, and 2601 Preston Road Frisco, Texas 75034.[1]

## PATENTS-IN-SUIT

### U.S. Patent No. 8,089,218

15.    U.S. Patent No. 8,089,218 (the "'218 Patent") is titled "Lighting devices" and was issued on January 3, 2012.  A true and correct copy of the '218 Patent is attached as Exhibit A.

---

[1] *See, e.g.,* https://www.tdlr.texas.gov/TABS/Search/Print/TABS2022001620 (disclosing location at 6625 Excellence Way, Plano, Texas); https://sec.wd3.myworkdayjobs.com/en-US/Samsung_ Careers/jobs?locations=31fc7bab264601f2a48f9e5ec5243c60&locations=502ab515a87601e1dd39 5608ad1e7f3b (disclosing location at 6555 Excellence Way, Plano, Texas); https://www.tdlr.texa s.gov/TABS/Projects/TABS2020013898 (disclosing location at 6625 Declaration Way, Plano, Texas); https://www.samsung.com/us/samsung-experience-store/locations/ (disclosing location at 2601 Preston Road, Frisco, Texas).

16.     The '218 Patent was filed on August 17, 2007 as U.S. Patent Application No. 12/377,596.

17.     Plaintiff is the owner of all rights, title, and interest in and to the '218 Patent, with the full and exclusive right to bring suit to enforce the '218 Patent, including the right to recover for past infringement.

18.     The '218 Patent is valid and enforceable under United States Patent Laws.

19.     The '218 Patent recognized problems with existing LED light sources at the time of the invention of the '218 Patent.

20.     For instance, the '218 Patent recognized that existing "LED light sources cannot work with an alternating current (AC) power source directly, and thus, AC/DC converters are required to convert the AC power source to a direct current (DC) power source for the LED light sources," but "AC/DC converters increase a product's cost, size and weight, consume more power, and result in more inconvenience for portable devices." '218 Patent at 1:22-28.  In view of the foregoing, the '218 Patent identified that "there is a need for an LED lighting device capable of being powered by AC and DC power sources without requiring AC power source to DC power source conversion." *Id.* at 1:28-31.

21.     In this respect, the '218 Patent discloses that "[e]mbodiments of a lighting device are provided, in which a lighting module comprises a plurality of micro-diodes formed on a substrate and a conductive wire pattern connecting to the micro-diodes, wherein the conductive wire pattern has at least three voltage feed points. A selection unit is coupled to a power source and selects at least two of the voltage feed points, such that a portion of the micro-diodes and the power source form at least one loop thereby turning on the micro-diodes in the loop." *Id.* at 1:35-43.

**U.S. Patent No. 8,101,959**

22.     U.S. Patent No. 8,101,959 (the "'959 Patent") is titled "Light emitting device" and was issued on January 24, 2012.  A true and correct copy of the '959 Patent is attached as Exhibit B.

23.     The '959 Patent was filed on September 29, 2010 as U.S. Patent Application No. 12/893,181, which is a continuation of U.S. Patent No. 7,816,695, filed January 16, 2009, which is a continuation of U.S. Patent No. 7,488,988, filed October 17, 2006, which claims priority to Taiwan Patent Application No. 094136683, filed October 20, 2005.

24.     Plaintiff is the owner of all rights, title, and interest in and to the '959 Patent, with the full and exclusive right to bring suit to enforce the '959 Patent, including the right to recover for past infringement.

25.     The '959 Patent is valid and enforceable under United States Patent Laws.

26.     The '959 Patent recognized problems with existing light emitting devices at the time of the invention of the '959 Patent.

27.     For instance, the '959 Patent recognized that, "[c]onventionally, after the fabrication of an LED wafer is completed, the wafer is cut into many LED chips," and "[t]he LED chips are then arranged on a pre-designed circuit board to accomplish the manufacture of light emitting devices based on different needs."  '959 Patent at 1:38-42.  However, "when the LED chips are individually wired by wire-bonding technique, the fabrication process is complicated and the conductive wire is susceptible to breakage" and thus, "the production yield is low and the cost is high."  *Id.*, 1:42-46.  Accordingly, the '959 Patent identified "a need to provide a light emitting device and a method of forming the same so as to improve the bonding quality and to reduce the fabrication cost."  *Id.*, at 1:47-49.

28.    In this regard, the '959 Patent discloses that "[i]t is an object of this invention to provide a light emitting device, which includes a plurality of light emitting diode structures wired in wafer level to form the LEDs connected in series or in parallel so as to improve the yield and reduce the manufacture cost," and "[i]t is a further object of this invention to provide a method for forming a light emitting device, which integrates the wiring process of a plurality of light emitting diodes into the wafer fabrication to avoid the complicated processes of individual chip dicing, wire bonding, and connection." *Id*. at 1:53-57, 2:15-20.

## U.S. Patent No. 8,492,780

29.    U.S. Patent No. 8,492,780 (the "'780 Patent") is titled "Light-emitting device and manufacturing method thereof" and was issued on July 23, 2013. A true and correct copy of the '780 Patent is attached as Exhibit C.

30.    The '780 Patent was filed on February 11, 2010 as U.S. Patent Application No. 12/703,964, and claims priority to Taiwan Patent Application No. 098104423, filed February 11, 2009.

31.    Plaintiff is the owner of all rights, title, and interest in and to the '780 Patent, with the full and exclusive right to bring suit to enforce the '780 Patent, including the right to recover for past infringement.

32.    The '780 Patent is valid and enforceable under United States Patent Laws.

33.    The '780 Patent recognized problems with existing light emitting devices at the time of the invention of the '780 Patent.

34.    For instance, with reference to FIG. 1 below, the '780 Patent recognized that, "because the surface of the transparent substrate 10 of the conventional light emitting device 100 … is substantially flat and the refractive index of the transparent substrate 10 is different from the

refractive index of the external environment, the total internal reflection (TIR) occurs when a light A emitted from the active layer 122." '780 Patent at 1:55-60.



FIG.1
(Related Art)

35.     As such, the '780 Patent recognized that "the light extraction efficiency from [a traditional] light emitting device [ ] is reduced drastically." *Id.*, 1:61-62.

36.     In view of the foregoing, the '780 Patent discloses a "light-emitting device" that comprises a "substrate" that includes a "a light emitting stack layer formed on the first major surface of the substrate, comprising a first conductive-type semiconductor layer, an active layer and a second conductive-type semiconductor layer," where "the sidewall of the substrate comprises a first area and a second area," and "the morphology of the first area is substantially flat and the morphology of the second area is substantially textured." *Id.*, cl. 1.  According to the '780 Patent, "light extraction efficiency of the light emitting device may be enhanced by the discontinuous structure on the sidewall." *Id.*, 2:9-11.

### U.S. Patent No. 8,552,460

37.     U.S. Patent No. 8,552,460 (the "'2,460 Patent") is titled "Package for a light emitting element" and was issued on October 8, 2013.  A true and correct copy of the '2,460 Patent is attached as Exhibit D.

38.     The '2,460 Patent was filed on September 8, 2011 as U.S. Patent Application No. 13/227,703, which is a divisional application of U.S. Patent Application No. 12/257,203, filed on

October 23, 2008, which is a continuation-in-part application of U.S. Patent Application No. 11/336,094, filed on January 20, 2006, from which it also claims priority.

39.   Plaintiff is the owner of all rights, title, and interest in and to the '2,460 Patent, with the full and exclusive right to bring suit to enforce the '2,460 Patent, including the right to recover for past infringement.

40.   The '2,460 Patent is valid and enforceable under United States Patent Laws.

41.   The '2,460 Patent recognized problems with existing light emitting devices at the time of the invention of the '2,460 Patent.

42.   For instance, the '2,460 Patent recognized that, "[h]igh brightness (HB) LED chips are being operated at ever-increasing power level… [and] that heat generated by the LED chips has to be removed by the package to the surroundings." '2,460 Patent at 1:29-33.  At the time, the "combination of the LED substrate, the submount, and the package material [were] poorly suited for transferring heat from the LED chip to the surroundings." *Id.*, at 1:34-36.  Accordingly, the '2,460 Patent recognized, among many other things, that a thin membrane of silicone could allow for "surface mount technology, which is facilitated by micro-via technology," as well as improve "compatibility of thermal properties (e.g., the coefficient of thermal expansion) of the LED and LED package" *Id.*, at 7:67-8:9.

43.   In view of the foregoing, and to address problems such as "a decrease in thermal conductivity that limits the physical size and power of the chips that can be used in [an LED] package," the '2,460 Patent discloses a "high-brightness LED module" that includes "a substrate (also referred to as submount or platform) with a recess in which a light emitting element is mounted," where "[t]he recess is defined by sidewalls and a membrane" and "[a]t least two through-holes filled with electrically conducting material (also referred to as micro-vias or

through-contacts) are disposed in the membrane to electrically connect the light emitting element to the exterior of the package." *Id.*, at 1:39:42, 1:47-54.

**U.S. Patent No. 8,766,309**

44. U.S. Patent No. 8,766,309 (the "'309 Patent") is titled "Omnidirectional reflector" and was issued on July 1, 2014. A true and correct copy of the '309 Patent is attached as Exhibit E.

45. The '309 Patent was filed on November 7, 2013 as U.S. Patent Application No. 14/073,915, which is a continuation application of U.S. Patent Application No. 13/857,678, filed on Apr. 5, 2013, which is a continuation application of U.S. Patent Application No. 12/202,167, filed Aug. 29, 2008, which claims priority to Provisional Patent Application No. 61/089,796, filed Aug. 18, 2008.

46. Plaintiff is the owner of all rights, title, and interest in and to the '309 Patent, with the full and exclusive right to bring suit to enforce the '309 Patent, including the right to recover for past infringement.

47. The '309 Patent is valid and enforceable under United States Patent Laws.

48. The '309 Patent recognized problems with existing LEDs at the time of the invention of the '309 Patent.

49. For instance, the '309 Patent discloses that "reflectors have been formed as part of [an] LED in order to direct the light in a desired direction and away from any light-absorbing substrates," and "[o]ne typical reflector is a distributed Bragg reflector (DBR), which uses alternating layers of materials having different refractive indices to reflect the emitted light." '309 Patent at 1:40-45. However, the '309 Patent discloses that, "[w]hile a DBR is helpful … it is not omnidirectional, as the reflectivity of the DBR drops when the angle of incidence of the light

impacting the DBR increases relative to normal to the surface of the DBR." *Id.*, at 1:45-49. According to the '309 Patent, "[t]his drop in the efficiency of the DBR causes a corresponding drop in efficiency of the LED." *Id.*, at 1:49-50. Thus, the '309 Patent identified that "what is needed is a reflector that has a greater efficiency for a larger range of incident angles." *Id.*, at 1:51-52.

50.     In this regard, the '309 Patent discloses that "[t]hese and other problems are generally solved or circumvented, and technical advantages are generally achieved, by preferred embodiments of the present invention which provide for an omnidirectional reflector incorporated with a light-emitting diode (LED)." *Id.*, at 1:56-60.

### U.S. Patent No. 9,257,604

51.     U.S. Patent No. 9,257,604 (the "'604 Patent") is titled "Light-emitting device having a patterned surface" and was issued on February 9, 2016. A true and correct copy of the '604 Patent is attached as Exhibit F.

52.     The '604 Patent was filed on December 18, 2013 as U.S. Patent Application No. 14/132,819, which is a continuation application of U.S. Patent Application No. 12/646,553, filed on December 23, 2009, which is a continuation-in-part of U.S. Patent Application No. 12/222,548, filed on August 12, 2008, which claims priority to Taiwan Patent Application No. 097150633, filed on December 24, 2008.

53.     Plaintiff is the owner of all rights, title, and interest in and to the '604 Patent, with the full and exclusive right to bring suit to enforce the '604 Patent, including the right to recover for past infringement.

54.     The '604 Patent is valid and enforceable under United States Patent Laws.

55.     The '604 Patent recognized problems with existing LEDs at the time of the

invention of the '604 Patent.

56.    For instance, the '604 Patent recognized that "[s]urface roughening technology is one of the efficient methods to enhance luminance." '604 Patent at 1:35-36.  In particular, "[t]he ratio of the pattern width to the width between patterns of the substrate surface [ ] is generally designed to be around 1," and thus, "a considerable portion of the substrate surface [ ] is still parallel to the surface of the active layer [ ], and the light emitted from the active layer [ ]  to the parallel substrate surface is easily reflected back to the epitaxial stack because of total internal reflection (TIR) effect and absorbed by the epitaxial stack to generate heat." *Id.*, at 1:52-59. According to the '604 Patent, this "worsens both the light extraction efficiency and the heat dissipation problems." *Id.*, at 1:59-61.  While the '604 Patent recognized that "the pattern is usually formed deeper in order to compensate the light loss due to the parallel (unpatterned) region," "the high aspect ratio of the deeper pattern causes difficulty for subsequently epitaxial growth and adversely affects the epitaxial quality." *Id.*, at 1:61-65.

57.    The '604 Patent further recognized "[a]nother prior technique for roughen surface" which involved utilizing a "mechanically polishing method to form a randomly distributed rough patterns on the substrate surface." *Id.*, at 1:66-2:1.  However, the '604 Patent discloses that "it is hard to control the roughened dimension, such as the depth or the width," and "the epitaxial quality is not good by growing an epitaxial layer on the randomly rough surface." *Id.*, at 2:2-4.

58.    Accordingly, the '604 Patent discloses a "light-emitting device" that comprises "a substrate having a first patterned unit; and a light-emitting stack on the substrate and having an active layer with a first surface; wherein the first patterned unit, protruding in a direction from the substrate to the light-emitting stack, has side surfaces abutting with each other and substantially non-parallel to the first surface in cross-sectional view, and has a non-polygon shape in top view."

12

*Id.*, at 2:8-15.

## U.S. Patent No. 9,847,460

59.    U.S. Patent No. 9,847,460 (the "'7,460 Patent") is titled "Light emitting device with reflective electrode" and was issued on December 19, 2017.  A true and correct copy of the '7,460 Patent is attached as Exhibit G.

60.    The '7,460 Patent was filed on March 16, 2016 as U.S. Patent Application No. 15/071,978, which is a continuation application of U.S. Patent Application No. 13/474,362, filed on May 17, 2012.

61.    Plaintiff is the owner of all rights, title, and interest in and to the '7,460 Patent, with the full and exclusive right to bring suit to enforce the '7,460 Patent, including the right to recover for past infringement.

62.    The '7,460 Patent is valid and enforceable under United States Patent Laws.

63.    The '7,460 Patent recognized problems with existing light emitting devices at the time of the invention of the '7,460 Patent.

64.    For instance, the '7,460 Patent recognized that, "[c]urrently, the inner light-emitting efficiency of the light-emitting diode is about 50% to 80%, but a part of the light may be absorbed by the electrode or the light-emitting layer so the total light-emitting efficiency is degraded." '7,460 Patent at 1:21-25.  Thus, "the mirror layer under the electrode has been provided to solve the problem." *Id.*, at 1:25-26.  However, "[w]hen the electrical current is applied into the light-emitting diode and flows through the electrode, the material of the mirror layer may be migrated to the electrode," and "[t]he migration of the material of the mirror layer causes the increase of the resistance of electrode and lowers the light-emitting efficiency of the light-emitting diode." *Id.*, at 1:30-35.  Thus, the '7,460 Patent discloses that "a barrier layer 11 is provided to prevent the

migration of the material of the mirror layer 12 …..” *Id.*, at 1:35-37.  Nevertheless, the '7,460 Patent discloses that "in recent years, as the light from a single chip is required to emit more, the electrical current applied to the light-emitting diode is increased, and the large electrical current may destroy the barrier layer 11." *Id.*, at 1:37-41.

65.      The '7,460 Patent further discloses that "[t]he conventional mirror layer 12 is formed of Al or Ag, and the conventional barrier layer 11 is formed by a single metal which can defense the migration of the mirror layer 12, such as Ti or Mo," but "it is not easy to form a barrier layer 11 which has a uniform thickness on the mirror layer 12." *Id.*, at 1:42-47.  Moreover, the '460 Patent discloses that, "if a high electrical current flows through the electrode, the barrier layer 11 formed by two different metals is usually still destroyed by the material of the mirror layer 12 …. and, thus, the conductivity of the electrode 4 substantially decreases." *Id.*, at 1:53-62.

66.      Accordingly, the '7,460 Patent discloses "[a] light-emitting device, comprises: a semiconductor light emitting stack; an electrode on the semiconductor light emitting stack, the electrode comprising a mirror layer, an adhesion layer inserted between the mirror layer and the semiconductor light emitting stack, a bonding layer; and a plurality of pits between the bonding layer and the semiconductor light emitting stack, wherein one of the plurality of pits is not filled up by the adhesion layer." *Id.*, at 1:66-2:6.

### U.S. Patent No. 10,038,116

67.      U.S. Patent No. 10,038,116 (the "'116 Patent") is titled "Light-emitting device having a patterned substrate and the method thereof" and was issued on July 31, 2018.  A true and correct copy of the '116 Patent is attached as Exhibit H.

68.      The '116 Patent was filed on August 30, 2017 as U.S. Patent Application No. 15/691,357, which is a continuation application of U.S. Patent Application No. 14/986,791, filed

on Jan. 4, 2016, which is a continuation application of U.S. Patent Application No. 13/618,544, filed on Sep. 14, 2012, issued as U.S. Pat. No. 9,231,151, which is a continuation application of U.S. Patent Application No. 12/860,599, filed on Aug. 20, 2010, issued as U.S. Pat. No. 8,648,522, which is a continuation application of U.S. Patent Application No. 11/878,961, filed Jul. 30, 2007, issued as U.S. Pat. No. 7,825,577, which claims priority to Taiwan Patent App. No. 095127924, filed Jul. 28, 2006.

69. Plaintiff is the owner of all rights, title, and interest in and to the '116 Patent, with the full and exclusive right to bring suit to enforce the '116 Patent, including the right to recover for past infringement.

70. The '116 Patent is valid and enforceable under United States Patent Laws.

71. The '116 Patent recognized problems with existing LEDs at the time of the invention of the '116 Patent.

72. For instance, the '116 Patent recognized that "[s]urface roughening has been an effective means to enhance the light-extraction efficiency, whether on a substrate or on a top semiconductor layer." '116 Patent at 1:38-40. However, the '116 Patent discloses that, "[a]lthough the light extraction efficiency is enhanced because of the roughened surface of the substrate [], the surface damages such as the alteration of the surface composition and the lattice distortion are resulted from the roughening process as well." *Id.*, at 1:50-54. And, in some instances, "part of the mask materials or the reactive ions are sputtered onto and even doped into a certain depth of the substrate, therefore the quality of the epitaxy layer deposited thereafter is downgraded." *Id.*, at 1:54-58. The '116 Patent further discloses that "[t]he mechanical polishing process also damages the lattice structure of the substrate surface, such that the quality of the successively grown semiconductor layer, such GaN, is worse, and the internal quantum efficiency

is lowered." *Id.*, at 1:58-62.

73.     Accordingly, the '116 Patent claims a "light-emitting device" that comprises "a textured substrate comprising a plurality of textured structures, wherein the plurality of textured structures and the textured substrate are both composed of sapphire, and "a light-emitting stack overlaying the textured substrate, comprising a first conductivity type semiconductor layer, an active layer, and a second conductivity type semiconductor layer," where "one of the plurality of textured structures comprises a top portion and a bottom portion, wherein a first distance between a first projection of the top portion on the bottom portion and the bottom portion at one side is different from a second distance between a second projection of the top portion on the bottom portion and the bottom portion at another side." *Id.*, at Cl. 1.

### U.S. Patent No. 10,439,108

74.     U.S. Patent No. 10,439,108 (the "'108 Patent") is titled "LED light emitting device for display device, and display device" and was issued on October 8, 2019.  A true and correct copy of the '108 Patent is attached as Exhibit I.

75.     The '108 Patent was filed on July 27, 2018 as U.S. Patent Application No. 16/047,979, which is a continuation of U.S. Patent Application No. 14/751,393, filed on Jun. 26, 2015, which claims priority to Chinese Patent Application No. 201510009581.X, filed on Jan. 8, 2015.

76.     Plaintiff is the owner of all rights, title, and interest in and to the '108 Patent, with the full and exclusive right to bring suit to enforce the '108 Patent, including the right to recover for past infringement.

77.     The '108 Patent is valid and enforceable under United States Patent Laws.

78.     The '108 Patent recognized problems with existing light emitting devices at the

time of the invention of the '108 Patent.

79.   For instance, the '108 Patent discloses the following:

[A] quantum dot film is fabricated by including the cadmium in a quantum dot material to improve the light emission efficiency and brightness of the quantum dot material, but the heavy metal cadmium is a highly poisonous substance, so the concentration of the quantum dot material in the quantum dot film has to be lowered. However if the concentration of the quantum dot material in the quantum dot film is low, then there may be a considerable gap between adjacent quantum dot components, and taking a blue LED as an example, light in complementary colors to blue light is red light and green light, and when the blue light emitted by the blue LED passes the quantum dot film, the majority of the blue light may pass the gap between the adjacent quantum dot components, and only the minority of the blue light may excite the quantum dot material to generate red light and green light mixed with the blue light into white light, thus resulting in a low utilization ratio of the blue light. Moreover too much of the blue light is transmitted so that the proportion of the blue light in the white light generated from the mixing is high, and the proportion of the red light and the green light is low, thus making the white light generated from the mixing bluish as a whole, which may degrade the light emission effect of the LED light emitting device.

'108 Patent at 2:58-3:14.

80.   In view of the foregoing, the '108 Patent discloses "an LED light emitting device for a display device, and a display device so as to improve both the utilization ratio of light emitted by an LED lamp and the light emission effect of the LED light emitting device." *Id.*, at 3:15-29.

**U.S. Patent No. 10,566,509**

81.   U.S. Patent No. 10,566,509 (the "'509 Patent") is titled "Light emitting structure" and was issued on February 18, 2020. A true and correct copy of the '509 Patent is attached as Exhibit J.

82.   The '509 Patent was filed on August 28, 2017 as U.S. Patent Application No. 15/688,339, which is a continuation of U.S. Patent Application No. 15/285,678, filed October 5, 2016, which is a continuation of U.S. Patent Application No. 14/536,169, filed November 7, 2014, which is a continuation of U.S. Patent Application No. 13/227,841, filed September 8, 2011, which

17

claims priority to Taiwan Patent Application No. 099130428, filed September 8, 2010.

83.    Plaintiff is the owner of all rights, title, and interest in and to the '509 Patent, with the full and exclusive right to bring suit to enforce the '509 Patent, including the right to recover for past infringement.

84.    The '509 Patent is valid and enforceable under United States Patent Laws.

85.    The '509 Patent recognized problems with existing light emitting devices at the time of the invention of the '509 Patent.

86.    For instance, the '509 Patent discloses that, "In a commonly-known process of making a light-emitting structure, a chip of a light-emitting element such as a light-emitting diode (LED) is made by dicing a finished epitaxial structure formed by an epitaxial growth process," and "[t]he chip is then arranged on a submount, which is a lead frame or a big size mounting substrate, for the following wire-bonding, soldering, phosphor-coating, and encapsulation processes." '509 Patent at 1:29-36.  However, the '509 Patent discloses that "there are too many steps in these processes," and thus "the time and the cost of the manufacture are dramatically increased." *Id.*, at 1:36-38.

87.    To address this problem and/or other problems (e.g., "[t]o improve a light extraction efficiency of the light-emitting element," the '509 Patent discloses "a light-emitting structure which includes a semiconductor light-emitting element, a first connection point and a reflective element," where "[t]he semiconductor light-emitting element includes a bottom surface, a top surface opposite to the bottom surface, and a side surface arranged between the bottom surface and the top surface, "[t]he first connection point is arranged on the bottom surface, and "[t]he reflective element includes a first portion arranged right beneath the bottom surface, and a second portion not overlapping the bottom surface and uplifted from a lower elevation lower than the bottom

18

surface to a higher elevation substantially equal to that of the top surface along a curved path."
*Id.*, at 1:42-54.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,089,218

88.    Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

89.    Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '218 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Samsung R85H Micro RG, among other substantially similar products (collectively, the "'218 Accused Products").

90.    By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '218 Patent in connection with one of the '218 Accused Products (e.g., the Samsung R85H Micro RG). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '218 Accused Products that it obtains during discovery.

91.    ***1(a): A lighting device comprising: a lighting module comprising: a plurality of micro-diodes formed on a substrate; and*** — Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '218 Accused Products that are covered by claim 1 of the '218 Patent.

For instance, the Samsung R85H Micro RGB is a lighting device comprising a lighting module comprising a plurality of micro-diodes formed on a substrate, as shown in Figure 1A - 1 and Figure 1A - 2 below:

19



*Figure 1A - 1*                    *Figure 1A - 2*

92.      ***1(b): a conductive wire pattern connecting to the micro-diodes, wherein the conductive wire pattern has at least three voltage feed points; and*** — The Samsung R85H Micro RG comprises a conductive wire pattern connecting to the micro-diodes, wherein the conductive wire pattern has at least three voltage feed points, as shown in Figure 1A – 3 to Figure 1A – 5 below:



*Figure 1A - 3*



*Figure 1A - 4*



*Figure 1A - 5*

93.    ***1(c): a selection unit used to be coupled to a power source and selecting at least two of the voltage feed points, such that a portion of the micro-diodes and the power source form at least one loop thereby turning on the micro-diodes in the loop***. — The Samsung R85H Micro RG comprises a selection unit coupled to a power source and selecting at least two of the voltage feed points, such that a portion of the micro-diodes and the power source form at least one loop thereby turning on the micro-diodes in the loop, as shown in Figure 1A – 6 to Figure 1A – 11 below:



*Figure 1A - 6*



*Figure 1A - 7*



*Figure 1A - 8*



*Figure 1A - 9*



*Figure 1A - 10*



*Figure 1A - 11*

94.    Additionally, Defendants have been and/or currently are an active inducer of infringement of the '218 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '218

Patent under 35 U.S.C. § 271(c).

95.    Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '218 Patent while being on notice of (or willfully blind to) the '218 Patent. For instance, Defendants have supplied and continue to supply the '218 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '218 Patent.

96.    Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '218 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '218 Accused Products and uses of the '218 Accused Products.

97.    Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '218 Patent. For instance, Defendants know (and/or have known) of the existence of the '218 Patent or at least should have known of the existence of the '218 Patent but were willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '218 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '218 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the '218 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the '218 Patent and/or subjectively believe (and/or have believed) that their actions will (and/or would) result in infringement of the '218 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

98.     Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '218 Patent by offering for sale, selling, and/or importing one or more components in connection with the '218 Accused Products that contribute to the direct infringement of the '218 Patent by customers of the '218 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '218 Patent or were willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '218 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '218 Patent. Defendants have supplied (and/or continues to supply) the '218 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '218 Patent by using the '218 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

99.     At least as early as the filing and/or service of the Complaint, Defendants' infringement of the '218 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

100.    Additional allegations regarding Defendants' knowledge of the '218 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

101.    Defendants' infringement of the '218 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

102.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '218 Patent.

103.    Plaintiff is entitled to recover from Defendants all damages that TCV has sustained as a result of Defendants' infringement of the '218 Patent, including, without limitation, a reasonable royalty.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,101,959

104.    Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

105.    Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '959 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Samsung R85H Micro RGB TV, among other substantially similar products (collectively, the "'959 Accused Products").

106.    By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '959 Patent in connection with one of the '959 Accused Products (e.g., the Samsung R85H Micro RGB TV). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '959 Accused Products that it obtains during discovery.

107.    ***1(a): A light-emitting device, comprising: a first part epitaxial layer having a first upmost top surface and a first width***;— Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '959 Accused Products that are covered by claim 1 of the '959 Patent.

The Samsung R85H Micro RGB TV is a light-emitting device comprising a first part epitaxial

28

layer having a first upmost top surface and a first width, as shown in Figure 1B – 1 to Figure 1B –

3 below:



*Figure 1B - 1*



*Figure 1B - 2*



*Figure 1B - 3*

108.    ***1(b): one or more second part epitaxial layers, each second part epitaxial layer, laterally separated from the first part epitaxial layer, able to emitting light under a forward bias voltage and having a second upmost top surface and a second width; and***— The Samsung R85H Micro RGB TV comprises one or more second part epitaxial layers, each second part epitaxial layer laterally separated from the first part epitaxial layer, able to emitting light under a forward bias voltage and having a second upmost top surface and a second width,  as shown in Figure 1B – 4 to Figure 1B – 6 below:



*Figure 1B - 4*



*Figure 1B - 5*



*Figure 1B - 6*

109.  *1(c): an underlayer formed below the first upmost top layer and the each second upmost top layer, and electrically connected to the first part epitaxial layer and the each second part epitaxial layer,*— The Samsung R85H Micro RGB TV comprises an underlayer formed below the first upmost top layer and the each second upmost top layer and electrically connected to the first part epitaxial layer and the each second part epitaxial layer, as shown in Figure 1B – 7 to Figure 1B – 8 below:



*Figure 1B - 7*



*Figure 1B - 8*

110.    ***1(d): wherein the first upmost top layer has an elevation substantially equal to that of the second upmost top surface, and the first width is substantially equal to the second width.*** — In the Samsung R85H Micro RGB TV, the first upmost top layer has an elevation substantially equal to that of the second upmost top surface and the first width is substantially

equal to the second width, as shown in Figure 1B – 9 to Figure 1B – 10 below:



*Figure 1B – 9*



*Figure 1B – 10*

111.    Additionally, Defendants have been and/or currently are an active inducer of infringement of the '959 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '959 Patent under 35 U.S.C. § 271(c).

112.    Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '959 Patent while being on notice of (or willfully blind to) the '959 Patent. For instance, Defendants have supplied and continue to supply the '959 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '959 Patent.

113.    Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '959 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '959 Accused Products and uses of the '959 Accused Products.

114.    Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '959 Patent. For instance, Defendants know (and/or have known) of the existence of the '959 Patent or at least should have known of the existence of the '959 Patent but were willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '959 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '959 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the '959 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the '959 Patent and/or subjectively believe (and/or have believed) that their actions will (and/or would) result in infringement of the '959 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

115.    Additionally, Defendants have been and/or currently are contributorily infringing

one or more claims of the '959 Patent by offering for sale, selling, and/or importing one or more components in connection with the '959 Accused Products that contribute to the direct infringement of the '959 Patent by customers of the '959 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '959 Patent or were willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '959 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '959 Patent. Defendants have supplied (and/or continues to supply) the '959 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '959 Patent by using the '959 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

116.    At least as early as the filing and/or service of the Complaint, Defendants' infringement of the '959 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

117.    Additional allegations regarding Defendants' knowledge of the '959 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

118.    Defendants' infringement of the '959 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

119.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '959 Patent.

120.    Plaintiff is entitled to recover from Defendants all damages that Plaintiff has

36

sustained as a result of Defendants' infringement of the '959 Patent, including, without limitation, a reasonable royalty.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,492,780

121.    Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

122.    Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '780 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Samsung 24" Monitor S24D304GAN S3, among other substantially similar products (collectively, the "'780 Accused Products").

123.    As one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '780 Patent in connection with one of the '780 Accused Products (e.g., Samsung 24" Monitor S24D304GAN S3). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '780 Accused Products that it obtains during discovery.

124.    ***1(a): A light emitting device, comprising: a substrate, wherein the substrate comprises a first major surface, a second major surface, and a sidewall; and*** — Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '780 Accused Products that are covered by claim 1 of the '780 Patent.

For instance, the Samsung 24" Monitor S24D304GAN S3 is a light emitting device comprising a substrate, wherein the substrate comprises a first major surface, a second major surface

and a sidewall, as shown in Figure 1A-1 to Figure 1A-2 below:



*Figure 1A – 1*



*Figure 1A – 2*

125.    ***1(b): a light emitting stack layer formed on the first major surface of the substrate, comprising a first conductive-type semiconductor layer, an active layer and a second conductive-type semiconductor layer;***— The Samsung 24" Monitor S24D304GAN S3 comprises

38

a light emitting stack layer formed on the first major surface of the substrate comprising a first conductive-type semiconductor layer, an active layer and a second conductive-type semiconductor layer, as shown in Figure 1A – 3 to Figure 1A – 4 below:



*Figure 1A - 3*



*Figure 1A – 4*

126.    ***1(c): wherein the sidewall of the substrate comprises a first area and a second area;*** — In the Samsung 24" Monitor S24D304GAN S3, the sidewall of the substrate comprises a first area and a second area, as shown in Figure 1A – 5 to Figure 1A – 6 below:



*Figure 1A – 5*



Figure 1A– 6

127.    ***1(d): wherein the morphology of the first area is substantially flat and the morphology of the second area is substantially textured.***— In the Samsung 24" Monitor S24D304GAN S3, the morphology of the first area is substantially flat, and the morphology of the second area is substantially textured, as shown in Figure 1A– 5 to Figure 1A– 6 above.

128.    Additionally, Defendants have been and/or currently are an active inducer of infringement of the '780 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '780 Patent under 35 U.S.C. § 271(c).

129.    Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '780 Patent while being on notice of (or willfully blind to) the '780 Patent. For instance, Defendants have supplied and continues to supply the '780 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '780 Patent.

130.   Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '780 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '780 Accused Products and uses of the '780 Accused Products.

131.   Defendants know (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '780 Patent. For instance, Defendants know (and/or has known) of the existence of the '780 Patent or at least should have known of the existence of the '780 Patent but were willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '780 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '780 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendants specifically intend (and/or have intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '780 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '780 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the '780 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

132.   Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '780 Patent by offering for sale, selling, and/or importing one or more components in connection with the '780 Accused Products that contribute to the direct infringement of the '780 Patent by customers of the '780 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '780 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendants

42

offer for sale, sell, and/or import one or more components in connection with the '780 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '780 Patent. Defendants have supplied (and/or continues to supply) the '780 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '780 Patent by using the '780 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

133. At least as early as the filing and/or service of the Complaint, Defendants' infringement of the '780 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

134. Additional allegations regarding Defendants' knowledge of the '780 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

135. Defendants' infringement of the '780 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

136. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '780 Patent.

137. Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '780 Patent, including, without limitation, a reasonable royalty.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,552,460

138. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

43

139.     Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '2,460 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Samsung Galaxy Z Flip 7, among other substantially similar products (collectively, "the '2,460 Accused Products").

140.     By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '2,460 Patent in connection with one of the '2,460 Accused Products (e.g., the Samsung Galaxy Z Flip 7). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '2,460 Accused Products that it obtains during discovery.

141.     *1(a): A high-brightness LED module comprising: a silicon substrate comprising a recess defined by sidewalls and a membrane, wherein at least two micro-vias are disposed in the membrane, the micro-vias comprising conductive material that passes through the membrane; and* — Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '2,460 Accused Products that are covered by claim 1 of the '2,460 Patent.

For instance, the Samsung Galaxy Z Flip 7 comprises a high brightness LED module comprising a silicon substrate comprising a recess defined by sidewalls and a membrane, wherein at least two micro-vias are disposed in the membrane, the micro-vias comprising conductive material that passes though the membrane, as shown in Figure 1B - 1 and Figure 1B – 7 below:



*Figure 1B - 1*



*Figure 1B – 2*



*Figure 1B - 3*



*Figure 1B - 4*



*Figure 1B – 5 (First micro-via p-contact)*



*Figure 1B – 6 (Second micro-via n-contact)*



*Figure 1B – 7 (The micro-vias comprise conductive material such as Nickel, Copper, and Tin that pass though the membrane.)*

142.     *1(b): a light emitting element mounted to the membrane, wherein a p-contact of the light emitting element is coupled to a first micro-via and an n-contact of the light emitting element is coupled to a second micro-via.* — The Samsung Galaxy Z Flip 7 includes a light emitting element mounted to the membrane, wherein a p-contact of the light emitting element is coupled to a first micro-via and an n-contact of the light emitting element is coupled to a second micro-via, as shown in Figure 1B – 8 to Figure 1B – 10 below:



*Figure 1B - 8*



*Figure 1B - 9 (p-contact is coupled to the first micro-via)*



*Figure 1B - 10 (n-contact is coupled to the second micro-via)*

143.    Additionally, Defendants have been and/or currently are an active inducer of

infringement of the '2,460 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '2,460 Patent under 35 U.S.C. § 271(c).

144. Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '2,460 Patent while being on notice of (or willfully blind to) the '2,460 Patent. For instance, Defendants have supplied and continues to supply the '2,460 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '2,460 Patent.

145. Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '2,460 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '2,460 Accused Products and uses of the '2,460 Accused Products.

146. Defendants know (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '2,460 Patent. For instance, Defendants know (and/or has known) of the existence of the '2,460 Patent or at least should have known of the existence of the '2,460 Patent but was willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '2,460 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '2,460 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendants specifically intend (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '2,460 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '2,460 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the '2,460 Patent but

have taken (and/or took) deliberate actions to avoid learning of those facts.

147. Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '2,460 Patent by offering for sale, selling, and/or importing one or more components in connection with the '2,460 Accused Products that contribute to the direct infringement of the '2,460 Patent by customers of the '2,460 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '2,460 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '2,460 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '2,460 Patent. Defendants have supplied (and/or continues to supply) the '2,460 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '2,460 Patent by using the '2,460 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

148. At least as early as the filing and/or service of the Complaint, Defendants' infringement of the '2,460 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

149. Additional allegations regarding Defendants' knowledge of the '2,460 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

150. Defendants' infringement of the '2,460 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

151. Plaintiff is in compliance with any applicable marking and/or notice provisions of

35 U.S.C. § 287 with respect to the '2,460 Patent.

152.   Plaintiff is entitled to recover from Defendants all damages that TCV has sustained as a result of Defendants' infringement of the '2,460 Patent, including, without limitation, a reasonable royalty.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,766,309

153.   Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

154.   Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '309 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Samsung tab a9+ ("'309 Accused Products").

155.   By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '309 Patent in connection with one of the '309 Accused Products (e.g., Samsung tab a9+). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '309 Accused Products that it obtains during discovery.

156.   *1(a): A device comprising: a substrate;* — Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '309 Accused Products that are covered by claim 1 of the '309 Patent.

For instance, the Samsung tab a9+ is a device comprising a substrate, as shown in Figure 1C - 1:

52



*Figure 1C - 1*

157.    **1(b): *a light-reflective layer disposed over the substrate;*** — The Samsung tab a9+ comprises a light-reflective layer disposed over the substrate, as shown in Figure 1C – 2 to Figure 1C – 4 below.



*Figure 1C - 2*

Sem_BED-C_028



*Figure 1C – 3*

| Quant. Type | Element | Line | keV | Mass% | Atom% | K ratio | Standard Data | ZAF |
|---|---|---|---|---|---|---|---|---|
| Automatically identified | C | K | 0.277 | 31.76±0.11 | 44.90±0.16 | 17.15 | Std-less | 1.01/3.64/1.00 |
| Automatically identified | O | K | 0.525 | 38.12±0.19 | 40.47±0.20 | 33.56 | Std-less | 0.96/2.34/1.00 |
| Automatically identified | Al | K | 1.486 | 2.99±0.04 | 1.88±0.02 | 4.25 | Std-less | 0.99/1.41/0.99 |
| Automatically identified | Si | K | 1.739 | 12.49±0.07 | 7.55±0.04 | 20.04 | Std-less | 0.97/1.28/1.00 |
| Automatically identified | Ti | K | 4.508 | 14.64±0.11 | 5.19±0.04 | 25.01 | Std-less | 1.16/1.00/1.00 |
| Total | | | | 100.00 | 100.00 | | | |
| Sample 9.1 | | | | | | | | Fitting ratio 0.0093 |

*Figure 1C - 4*

158.    ***1(c): a photonic crystal layer disposed over the substrate, the photonic crystal layer being configured to reflect light in a plane substantially parallel with the substrate while allowing light to travel unreflected in a direction substantially perpendicular to the substrate***;

and — The Samsung tab a9+ comprises a photonic crystal layer disposed over the substrate, where the photonic crystal layer is configured to reflect light in a plane substantially parallel with the substrate while allowing light to travel unreflected in a direction substantially perpendicular to the substrate. *See, e.g.,* Figure 1C – 5 to Figure 1C – 7 below:



*Figure 1C - 5*



*Figure 1C – 6*



*Figure 1C - 7*

159.    ***1(d): a light-emitting diode (LED) disposed over the substrate, wherein the LED includes a light-emitting layer disposed between two doped layers having different types of conductivity, and wherein the light-reflective layer and the photonic crystal layer are disposed between the substrate and the LED***. — The Samsung tab a9+ comprises an LED disposed over the substrate, where the LED includes a light-emitting layer disposed between two doped layers having different types of conductivity, and where the light-reflective layer and the photonic crystal layer are disposed between the substrate and the LED.  See, e.g., Figure 1C – 8 to Figure 1C – 10 below:



*Figure 1C – 8*



*Figure 1C - 9*



*Figure 1C -10*

160. Additionally, Defendants have been and/or currently are an active inducer of infringement of the '309 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '309 Patent under 35 U.S.C. § 271(c).

161. Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '309 Patent while

being on notice of (or willfully blind to) the '309 Patent. For instance, Defendants have supplied and continues to supply the '309 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '309 Patent.

162.   Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '309 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '309 Accused Products and uses of the '309 Accused Products.

163.   Defendants know (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '309 Patent. For instance, Defendants know (and/or has known) of the existence of the '309 Patent or at least should have known of the existence of the '309 Patent but were willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '309 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '309 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendants specifically intend (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '309 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '309 Patent and/or subjectively believe (and/or has believed) that its actions will (and/or would) result in infringement of the '309 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

164.   Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '309 Patent by offering for sale, selling, and/or importing one or more components in connection with the '309 Accused Products that contribute to the direct

infringement of the '309 Patent by customers of the '309 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '309 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '309 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '309 Patent. Defendants have supplied (and/or continues to supply) the '309 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '309 Patent by using the '309 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

165. At least as early as the filing and/or service of the Complaint, Defendants' infringement of the '309 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

166. Additional allegations regarding Defendants' knowledge of the '309 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

167. Defendants' infringement of the '309 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

168. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '309 Patent.

169. Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '309 Patent, including, without limitation, a reasonable royalty.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 9,257,604

170. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

171. Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '604 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Samsung Galaxy Book 4 NP750XGK, among other substantially similar products ("'604 Accused Products").

172. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '604 Patent in connection with one of the '604 Accused Products (e.g., Samsung Galaxy Book 4 NP750XGK). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '604 Accused Products that it obtains during discovery.

173. *1(a): A light-emitting device comprising: a substrate having a top surface and a first patterned unit bulged on the top surface*; and — Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '604 Accused Products that are covered by claim 1 of the '604 Patent.

For instance, the Samsung Galaxy Book 4 NP750XGK is a light-emitting device comprising a substrate having a top surface and a first patterned unit bulged on the top surface, as shown in Figure 1D – 1 below:



*Figure 1D - 1*

174.   ***1(b): a light-emitting stack formed on the substrate and having an active layer with a first surface substantially parallel to the top surface***; — The Samsung Galaxy Book 4 NP750XGK comprises a light-emitting stack formed on the substrate and having an active layer with a first surface substantially parallel to the top surface, as shown in Figure 1D – 2 to Figure 1D – 3 below.



*Figure 1D – 2*



*Figure 1D – 3*

175.    ***1(c): wherein a base of the first patterned unit has a non-polygon shape in a top view, and in a cross-sectional view the first patterned unit has a vertex, a first inclined line segment, and a second inclined line segment, and the first inclined line segment and the second inclined line segment connect at the vertex.*** —  In the Samsung Galaxy Book 4 NP750XGK, a base of the first pattered unit has a non-polygon shape in a top view, and in a cross-sectional view the first patterned unit has a vertex, a first inclined line segment, and a second inclined line segment, and the first inclined line segment and the second inclined line segment connect at the vertex. See, e.g., Figure 1D – 4 to Figure 1D – 5 below:



*Figure 1D - 4*



*Figure 1D – 5*

176. Additionally, Defendants have been and/or currently are an active inducer of infringement of the '604 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '604 Patent under 35 U.S.C. § 271(c).

177. Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '604 Patent while being on notice of (or willfully blind to) the '604 Patent. For instance, Defendants have supplied

and continues to supply the '604 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '604 Patent.

178.   Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '604 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '604 Accused Products and uses of the '604 Accused Products.

179.   Defendants know (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '604 Patent. For instance, Defendants know (and/or has known) of the existence of the '604 Patent or at least should have known of the existence of the '604 Patent but were willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '604 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '604 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendants specifically intend (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '604 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '604 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the '604 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

180.   Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '604 Patent by offering for sale, selling, and/or importing one or more components in connection with the '604 Accused Products that contribute to the direct infringement of the '604 Patent by customers of the '604 Accused Products. In particular, as set

forth above, Defendants have had actual knowledge of the '604 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '604 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '604 Patent. Defendants have supplied (and/or continues to supply) the '604 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '604 Patent by using the '604 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

181. At least as early as the filing and/or service of the Complaint, Defendants' infringement of the '604 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

182. Additional allegations regarding Defendants' knowledge of the '604 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

183. Defendants' infringement of the '604 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

184. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '604 Patent.

185. Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '604 Patent, including, without limitation, a reasonable royalty.

**COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 9,847,460**

186.    Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

187.    Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '7,460 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Samsung S32D396GAN S3 32 Monitor, among other substantially similar products (collectively, the "'7,460 Accused Products").

188.    By way of non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '7,460 Patent in connection with one of the '7,460 Accused Products (e.g., Samsung S32D396GAN S3 32 Monitor). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '7,460 Accused Products that it obtains during discovery.

189.    ***1(a): A light emitting device, comprising: a semiconductor light emitting stack;*** — Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '7,460 Accused Products that are covered by claim 1 of the '7,460 Patent.

For instance, the Samsung S32D396GAN S3 32 Monitor is a light emitting device comprising a semiconductor light emitting stack, as shown in Figure 1E-1 below:

66



*Figure 1E – 1*

190. ***1(b): an electrode on the semiconductor light emitting stack, the electrode comprising:*** — The Samsung S32D396GAN S3 32 Monitor includes an electrode on the semiconductor light emitting stack, as shown in Figure 1E – 2 below:



*Figure 1E - 2*

191. ***1(c): a mirror layer; and adhesion layer inserted between the mirror layer and***

*the semiconductor light emitting stack; and a bonding layer on the mirror layer; and* — The Samsung S32D396GAN S3 32 Monitor includes a mirror layer, an adhesion layer between the mirror layer and the semiconductor light emitting stack, and a bonding layer on the mirror layer, as shown in Figure 1E – 3 below:



*Figure 1E - 3*

192.    *1(d): a plurality of pits between the bonding layer and the semiconductor light emitting stack;* — The Samsung S32D396GAN S3 32 Monitor includes a plurality of pits between the bonding layer and the semiconductor light emitting stack, as shown in Figure 1E – 4 below:



*Figure 1E - 4*

193. ***1(e): wherein one of the plurality of pits is not filled up by the adhesion layer.*** —
In the Samsung S32D396GAN S3 32 Monitor, one of the plurality of pits is not filled up by the
adhesion layer, as shown in Figure 1E – 5 below:



*Figure 1E - 5*

194. Additionally, Defendants have been and/or currently are an active inducer of infringement of the '7,460 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '7,460 Patent under 35 U.S.C. § 271(c).

195. Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '7,460 Patent while being on notice of (or willfully blind to) the '7,460 Patent. For instance, Defendants have supplied and continues to supply the '7,460 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '7,460 Patent.

196. Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '7,460 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '7,460 Accused Products and uses of the '7,460 Accused Products.

197. Defendants know (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '7,460 Patent. For instance, Defendants know (and/or has known) of the existence of the '7,460 Patent or at least should have known of the existence of the '7,460 Patent but was willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '7,460 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '7,460 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendants specifically intend (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '7,460 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or has intended) that its actions will (and/or would) result in direct infringement of one or

70

more claims of the '7,460 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the '7,460 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

198. Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '7,460 Patent by offering for sale, selling, and/or importing one or more components in connection with the '7,460 Accused Products that contribute to the direct infringement of the '7,460 Patent by customers of the '7,460 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '7,460 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '7,460 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '7,460 Patent. Defendants have supplied (and/or continues to supply) the '7,460 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '7,460 Patent by using the '7,460 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

199. At least as early as the filing and/or service of the Complaint, Defendants' infringement of the '7,460 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

200. Additional allegations regarding Defendants' knowledge of the '7,460 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

201.   Defendants' infringement of the '7,460 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

202.   Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '7,460 Patent.

203.   Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '7,460 Patent, including, without limitation, a reasonable royalty.

### COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 10,038,116

204.   Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

205.   Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '116 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Samsung Galaxy Watch 8, among other substantially similar products (collectively, the "'116 Accused Products").

206.   As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '116 Patent in connection with one of the '116 Accused Products (e.g., the Samsung Galaxy Watch 8). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '116 Accused Products that it obtains during discovery.

207.    ***1(a): A light emitting device, comprising: a textured substrate comprising a plurality of textured structures, wherein the plurality of textured structures and the textured substrate are both composed of sapphire; and*** — Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '116 Accused Products that are covered by claim 1 of the '116 Patent.

For instance, the Samsung Galaxy Watch 8 is a light emitting device comprising a textured substrate including a plurality of textured structures, where the plurality of textured structures and the textured substrate are both composed of sapphire. *See, e.g.,* Figure 1F-1 to Figure 1F-3 below:



*Figure 1F – 1*

| Quant. Type | Chemical formula | Line | keV | Mass% | Mol% | Cations | K ratio | Standard Data | ZAF |
|---|---|---|---|---|---|---|---|---|---|
| Automatically identified | C | K | 0.277 | 81.43±0.49 | 97.39±0.58 | 0.00 | 83.14 | Std-less | 1.01/1.97/1.00 |
|  | O | K | 0.525 |  |  |  |  | Std-less |  |
| Automatically identified | Al2O3 | K | 1.486 | 18.48±0.41 | 2.60±0.06 | 15.96 | 16.77 | Std-less | 0.99/1.20/1.00 |
| Automatically identified | Ga2O3 | L | 1.098 | 0.09±0.10 | 0.01±0.01 | 0.04 | 0.09 | Std-less | 1.16/1.27/0.98 |
| Total |  |  |  | 100.00 | 100.00 |  |  |  |  |
| Sample 3.1 |  |  |  |  |  |  |  |  | Fitting ratio 0.0545 |

*Figure 1F – 2*

73

| Quant. Type | Chemical formula | Line | keV | Mass% | Mol% | Cations | K ratio | Standard Data | ZAF |
|---|---|---|---|---|---|---|---|---|---|
| Automatically identified | C | K | 0.277 | 81.10±0.48 | 97.33±0.58 | 0.00 | 82.69 | Std-less | 1.01/1.99/1.00 |
| | O | K | 0.525 | | | | | Std-less | |
| Automatically identified | Al2O3 | K | 1.486 | 18.90±0.42 | 2.67±0.06 | 16.00 | 17.31 | Std-less | 0.99/1.20/1.00 |
| Total | | | | 100.00 | 100.00 | | | | |
| Sample 3.2 | | | | | | | | | Fitting ratio 0.0723 |

*Figure 1F - 3*

208.    ***1(b): a light-emitting stack overlaying the textured substrate, comprising a first conductivity type semiconductor layer, an active layer, and a second conductivity type semiconductor layer***, — The Samsung Galaxy Watch 8 includes a light-emitting stack overlaying the textured substrate, comprising a first conductivity type semiconductor layer, an active layer, and a second conductivity type semiconductor layer, as shown in Figure 1F – 4 below:



*Figure 1F – 4*

209.    ***1(c): wherein one of the plurality of textured structures comprises a top portion and a bottom portion, wherein a first distance between a first projection of the top portion on the bottom portion and the bottom portion at one side is different from a second distance between a second projection of the top portion on the bottom portion and the bottom portion at another***

74

*side*. — The Samsung Galaxy Watch 8 includes one of the plurality of textured structures comprises a top portion and a bottom portion, wherein a first distance between a first projection of the top portion on the bottom portion and the bottom portion at one side is different from a second distance between a second projection of the top portion on the bottom portion and the bottom portion at another side as seen in Figure 1F – 5 to Figure 1F - 6:



*Figure 1F – 5*



*Figure 1F - 6*

210.   Additionally, Defendants have been and/or currently are an active inducer of infringement of the '116 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '116 Patent under 35 U.S.C. § 271(c).

211.   Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '116 Patent while being on notice of (or willfully blind to) the '116 Patent. For instance, Defendants have supplied and continues to supply the '116 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '116 Patent.

212.   Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '116 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '116 Accused Products and uses of the '116 Accused Products.

213.   Defendants know (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '116 Patent. For instance, Defendants know (and/or has known) of the existence of the '116 Patent or at least should have known of the existence of the '116 Patent but was willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '116 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '116 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendants specifically intend (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '116 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '116 Patent and/or subjectively believe (and/or have believed) that its actions

76

will (and/or would) result in infringement of the '116 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

214.    Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '116 Patent by offering for sale, selling, and/or importing one or more components in connection with the '116 Accused Products that contribute to the direct infringement of the '116 Patent by customers of the '116 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '116 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '116 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '116 Patent. Defendants have supplied (and/or continues to supply) the '116 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '116 Patent by using the '116 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

215.    At least as early as the filing and/or service of the Complaint, Defendants' infringement of the '116 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

216.    Additional allegations regarding Defendants' knowledge of the '116 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

217.    Defendants' infringement of the '116 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

218.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '116 Patent.

219.    Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '116 Patent, including, without limitation, a reasonable royalty.

### COUNT IX: INFRINGEMENT OF U.S. PATENT NO. 10,439,108

220.    Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

221.    Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '108 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Samsung QN43QN90FAF, among other substantially similar products (collectively, the "'108 Accused Products").

222.    As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '108 Patent in connection with one of the '108 Accused Products (e.g. the Samsung QN43QN90FAF). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '108 Accused Products that it obtains during discovery.

223.    *1(a): An LED light emitting device, comprising a quantum dot film, a dichroic layer, and a blue LED emitter, wherein:* — Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '108 Accused

78

Products that are covered by claim 1 of the '108 Patent.

For instance, the Samsung QN43QN90FAF is a LED light emitting device comprising a quantum dot film, a dichroic layer, and a blue LED emitter, as shown in Figure 1H-1 to Figure 1H-2 below:



*Figure 1H – 1*



*Figure 1H - 2*

224.    ***1(b): the blue LED emitter is configured to emit a blue light toward the quantum dot film and excite a quantum dot material encapsulated in the quantum dot film to produce light of longer wavelength***;— In the Samsung QN43QN90FAF, the blue LED emitter is configured to emit a blue light towards the quantum dot film and excite a quantum dot material encapsulated in the quantum dot film to produce light of longer wavelength, as shown in Figure 1H – 3 to Figure 1H – 6 below:



*Figure 1H – 3*



*Figure 1H - 4*



*Figure 1H - 5*



*Figure 1H – 6 (EDS Measurement of the quantum dot material)*

225.   ***1(c): the quantum dot film is disposed between the blue LED emitter and the dichroic layer such that the blue light emitted from the blue LED emitter passes the quantum dot film before reaching the dichroic layer***; and — In the Samsung QN43QN90FAF, the quantum dot film is disposed between the blue LED emitter and the dichroic layer such that the blue light emitted from the blue LED emitter passes the quantum dot film before reaching the dichroic layer, as shown in Figure 1H – 7 below:



*Figure 1H - 7*

226.    ***1(d): the dichroic layer is configured to: substantially reflect a first spectral portion of the blue light emitted from the blue LED emitter and arriving at the dichroic layer towards the quantum dot film, wherein the first spectral portion is determined by a preset spectral band;*** — In the Samsung QN43QN90FAF, the dichroic layer is configured to substantially reflect a first spectral portion of the blue light, emitted from the blue LED emitter and arriving at the dichroic layer towards the quantum dot film, where the first spectral portion is determined by a preset band (e.g., 400nm-435nm and/or 470nm-485nm), as shown in Figure 1H – 8 and Figure 1H – 9 below:



*Figure 1H – 8*



Figure 1H – 9

227.    *1(e): substantially transmit, towards outside of the LED light emitting device, a second spectral portion of the blue light outside of the preset spectral band of the blue light emitted from the blue LED emitter and arriving at the dichroic layer; and—* In the Samsung QN43QN90FAF, the dichroic layer is configured to substantially transmit, towards outside of the LED light emitting device, a second spectral portion of the blue light outside of the preset spectral band of the blue light emitted from the blue LED emitter and arriving at the dichroic layer (e.g., 430nm-470nm), as shown in Figure 1H – 10 and Figure 1H – 11 below:



*Figure 1H – 10*

*Figure 1H – 11*

228.    ***1(f): substantially transmit, towards outside of the LED light emitting device, the light of longer wavelength produced by the quantum dot film and arriving at the dichroic layer.***— In the Samsung QN43QN90FAF, the dichroic layer is configured to substantially transmit, towards outside of the LED light emitting device, the light of longer wavelength produced by the quantum dot film and arriving at the dichroic layer (e.g., red and green light), as shown in Figure 1H – 12 and Figure 1H – 13 below:

QD Film Light Emission:



*Figure 1H - 12*

Dichroic Layer Light Emission:



*Figure 1H – 13*

229.    Additionally, Defendants have been and/or currently are an active inducer of infringement of the '108 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '108 Patent under 35 U.S.C. § 271(c).

230.    Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '108 Patent while being on notice of (or willfully blind to) the '108 Patent. For instance, Defendants have supplied and continues to supply the '108 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '108 Patent.

231.   Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '108 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '108 Accused Products and uses of the '108 Accused Products.

232.   Defendants know (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '108 Patent. For instance, Defendants know (and/or has known) of the existence of the '108 Patent or at least should have known of the existence of the '108 Patent but was willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '108 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '108 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendants specifically intend (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '108 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '108 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the '108 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

233.   Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '108 Patent by offering for sale, selling, and/or importing one or more components in connection with the '108 Accused Products that contribute to the direct infringement of the '108 Patent by customers of the '108 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '108 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendants

offer for sale, sell, and/or import one or more components in connection with the '108 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '108 Patent. Defendants have supplied (and/or continues to supply) the '108 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '108 Patent by using the '108 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

234. At least as early as the filing and/or service of the Complaint, Defendants' infringement of the '108 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

235. Additional allegations regarding Defendants' knowledge of the '108 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

236. Defendants' infringement of the '108 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

237. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '108 Patent.

238. Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '108 Patent, including, without limitation, a reasonable royalty.

**COUNT X: INFRINGEMENT OF U.S. PATENT NO. 10,566,509**

239. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

240.   Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '509 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Samsung Galaxy S25, among other substantially similar products (collectively, the "'509 Accused Products").

241.   By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '509 Patent in connection with one of the '509 Accused Products (e.g., the Samsung Galaxy S25). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '509 Accused Products that it obtains during discovery.

242.   ***1(a): A light-emitting structure, comprising: a semiconductor light-emitting element comprising a bottom surface a top surface opposite to the bottom surface, and a side surface arranged between the bottom surface and the top surface;*** — Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '509 Accused Products that are covered by claim 1 of the '509 Patent.

For instance, the Samsung Galaxy S25 is a light-emitting structure, comprising a semiconductor light-emitting element comprising a bottom surface, a top surface opposite to the bottom surface, and a side surface arranged between the bottom surface and the top surface, as shown in Figure 1I - 1 below:



*Figure 1I - 1*

243.  ***1(b): a first connection point arranged under the bottom surface; and*** — The Samsung Galaxy S25 comprises a first connection point arranged under the bottom surface, as shown in Figure 1I – 2:



*Figure 1I - 2*

244.  ***1(c): a reflective element, comprising an inner sidewall having a first portion arranged right beneath the bottom surface, and a second portion not overlapping the bottom surface and uplifted from a lower elevation lower than the bottom surface to a higher elevation substantially equal to that of the top surface along a curved path,*** — The Samsung Galaxy S25

91

comprises a reflective element, comprising an inner sidewall having a first portion arranged right

beneath the bottom surface, and a second portion not overlapping the bottom surface and uplifted

from a lower elevation lower than the bottom surface to a higher elevation substantially equal to

that of the top surface along a curved path, as shown in Figure 1I – 3 to Figure 1I – 4 below:



*Figure 1I - 3*



*Figure 1I - 4*

245.    ***1(d): wherein the curved path has a first slope variation from a first smaller value to a first greater value, and a second slope variation from a second greater value to a second smaller value.*** — The Samsung Galaxy S25 comprises a reflective element, wherein the curved path has a first slope variation from a first smaller value to a first greater value, and a second slope variation from a second greater value to a second smaller value., as shown in Figure 1I – 5 below:

*Figure 1I – 5*

246. Additionally, Defendants have been and/or currently are an active inducer of infringement of the '509 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '509 Patent under 35 U.S.C. § 271(c).

247. Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '509 Patent while being on notice of (or willfully blind to) the '509 Patent. For instance, Defendants have supplied and continues to supply the '509 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '509 Patent.

248. Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '509 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '509 Accused Products and uses of the '509 Accused Products.

249. Defendants know (and/or has known) that such encouraging and aiding does

(and/or would) result in its customers directly infringing the '509 Patent. For instance, Defendants know (and/or has known) of the existence of the '509 Patent or at least should have known of the existence of the '509 Patent but was willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '509 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '509 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendants specifically intend (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '509 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '509 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the '509 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

250.    Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '509 Patent by offering for sale, selling, and/or importing one or more components in connection with the '509 Accused Products that contribute to the direct infringement of the '509 Patent by customers of the '509 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '509 Patent or were willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '509 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '509 Patent. Defendants have supplied (and/or continues to supply) the '509 Accused Products that comprise such component(s) to customers, who then

directly infringe one or more claims of the '509 Patent by using the '509 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

251.    At least as early as the filing and/or service of the Complaint, Defendants' infringement of the '509 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

252.    Additional allegations regarding Defendants' knowledge of the '509 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

253.    Defendants' infringement of the '509 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

254.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '509 Patent.

255.    Plaintiff is entitled to recover from Defendants all damages that TCV has sustained as a result of Defendants' infringement of the '509 Patent, including, without limitation, a reasonable royalty.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests:

A.    That Judgment be entered that Defendants have infringed at least one or more claims of the Patents-in-Suit, directly and/or indirectly, literally and/or under the doctrine of equivalents;

B.    An award of damages sufficient to compensate Plaintiff for Defendants' infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Defendants' willful infringement;

96

C.      That the case be found exceptional under 35 U.S.C. § 285 and that Plaintiff be

awarded its reasonable attorneys' fees;

D.      Costs and expenses in this action;

E.      An award of prejudgment and post-judgment interest; and

F.      Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial

by jury on all issues so triable.

Dated:  June 23, 2026

Respectfully submitted,

By: */s/ Mark D. Siegmund*
Mark D. Siegmund
TX Bar No. 24117055
msiegmund@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES PC**
7901 Fish Pond Rd., 2nd Floor
Waco, Texas 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

Gregory Love
TX Bar No. 24013060
glove@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES PC**
104 E Houston Street, Suite 115
Marshall, TX 75670
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

William D. Ellerman
TX Bar No. 24007151
wellerman@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES PC**
8140 Walnut Hill Ln, Suite 105
Dallas, TX 75231
Telephone: 254.732.2242
Facsimile: 866.627.3509

97

Sean M. Sullivan (*pro hac vice* forthcoming)
sullivan@ls3ip.com
Cole B. Richter (*pro hac vice* forthcoming)
richter@ls3ip.com
Michael P. Boyea (*pro hac vice* forthcoming)
boyea@ls3ip.com
Jae Y. Pak (*pro hac vice* forthcoming)
pak@ls3ip.com
Andrew Gerla (*pro hac vice* forthcoming)
gerla@ls3ip.com
**LEE SULLIVAN SHEA & SMITH LLP**
656 West Randolph Street, Floor 5W
Chicago, IL 60661
Tel: (312) 754-0002
Fax: (312) 754-0003

***Attorneys for Plaintiff Tau Ceti Ventures LLC***